I will say for the record that, as we call this case, Jett v. Sicroff, that we've had some correspondence with Mr. Whaley, who suggested on behalf of Mr. Sicroff that the case be submitted on briefs. We were reluctant to act upon that request because it turns out that Mr. Sicroff has not admitted to practice in this case. Mr. Whaley is not admitted to practice in this court. So as far as we're concerned, Mr. Weins, the time is yours. You can either submit if you wish or you can use your time, but Mr. Whaley apparently will not be appearing today. Thank you. That's the first I knew of that. Does that mean that Mr. Whaley's briefs will be stricken? I don't know what it means other than we are not entertaining his motion to submit. Well, in that case, I would make a formal request that all briefs submitted on behalf of Mr. Whaley be stricken on the grounds that he's not properly admitted before this court. It's my understanding that's a threshold requirement before you can file a brief. Well, we'll take that request under advisement, Mr. Weins. Well, in light of the circumstances, I don't want to belabor the point. I do want to emphasize two things. And it seemed to me like I was screaming metaphorically at the top of my lungs at both the bankruptcy court and the district court on this particular point and didn't seem to get through. So I would like to have one more opportunity. The crux of this case boils down to a single sentence in the ruling of the bankruptcy court. Quote, while there can be no doubt the debtor intentionally and repeatedly published his untrue statements about plaintiff, the evidence tends to show that he believed those statements were true and, in his opinion, explained the real cause for the proposal to close the geography department. Close quote. Did he offer any evidence in that regard? Absolutely not. That's why I was so perplexed when he found evidence. And it turns out the bankruptcy court cites specifically Exhibit 12, which is a newspaper article. The plaintiff had to produce that as part of our burden of showing the publication. And we only produced it for the direct quote. It was quoted in my trial brief for the defamatory statements. For some reason, the bankruptcy court pulled out another portion of that newspaper article where the defendant claims to have told a newspaper reporter that he offered to show him the, quote, evidence of his charges that he had at home. I mean, that is, in my way of counting, is triple hearsay. One, it's hearsay because it's just an article in the newspaper. Two, it's hearsay as to whether or not Seacroft really made such a statement. It's hearsay as to whether he had any evidence, quote, evidence, proving that he believed his charges. And fourth, it's hearsay as to whatever his evidence was. Now, this would be a completely different case if Mr. Seacroft bothered to show up at trial, got on the stand, produced his evidence, made his testimony, and I would have an opportunity to cross-examine it. Then there would be a tribal issue for the court, the bankruptcy court, to consider our version of the facts and Seacroft's version. But there was absolutely no evidence. Counsel, help us sort out what's going on in state court. Is there something still pending there, and has it been stayed? It's been stayed pending. It's been stayed for, it seems like a decade now. Our state court action is stayed pending the final result of the bankruptcy action. Now, at one point, the stay was lifted enough for us to try to settle the case, and we actually reached a tentative settlement. Mr. Once again, Mr. Seacroft didn't bother to show up at the settlement conference, although he was mandated to do so. Mr. Whaley represented. He was on the phone outside in the hall with him, reached the settlement, went to sign the settlement documents, and then it was repudiated. I believe it was all a subterfuge, because, Mr. Duke, our information is Seacroft has been in Nepal for some years. I was wondering just from a pragmatic standpoint why your client wants to pursue this, because the defendants in Nepal may never get back. Because if we lose – good point. We don't want to pursue this. We offered years and years and years ago to simply dismiss him when we made the settlement with all the other defendants. It's under a gag order, so I can't give the amount, but it was a substantial amount of money. He repeatedly threatened to me personally, and I put it in my brief, that he would sue us all, including me, for malicious prosecution if we just dismissed him. So this is a defensive going forward, not by choice, but by compulsion. If we could get – in fact, that was the terms of the settlement. We'll dismiss our case. You go away. Okay? And then he repudiated it. If you get a dollar's worth of damages, that's all you'd want anyway. Well, at this point, we just – I need to shield my clients and myself, frankly, from an undeserved malicious prosecution claim, when we're doing everything we can to get rid of this case, but the defendant is obstinate. So that's the first point. And the second crucial point is I felt like I got hit by the train going both directions, so to speak. The bankruptcy court relied upon the Kassler standard. It's a 19, I think, I believe, 79-cent case cited in the brief where the defendant – we must show the defendant subjectively knew his statements were false. But that was the wrong standard, because in 1990, the Ninth Circuit ruled in the Baldwin case that that was – that you either had to have two – one of two things, not both, either a subjective motive to injure or objective substantial certainty. Are we talking about the difference between a Federal standard versus a State standard? No. I believe they're all Federal bankruptcy cases. But you're applying the Federal standard, not any standard in court. Oh, yes. Yes. The trial court standard is a completely different standard. In terms of dischargeability, the bankrupt dischargeability plaintiff under Kassler needed to prove that he, quote, knew his statements were false. That case had been outlawed or outdated by the 1990 case of Baldwin, which I relied upon in preparing my case for trial. I only had to prove under Baldwin the objective substantial certainty. And I gave abundant evidence that the uniformed witnesses said that he had no – absolutely no basis for this. He continued to make the statements a year after the vice chancellor testified that he had no basis. He was sitting in the room. He personally – sitting with his – or he personally didn't have counsel at that time. Personally cross-examined the vice chancellor, because obviously he knows by that – at least by that time, he has no basis. But to add insult to injury, then when I got to the district court, the district court said, well, no, you have to prove that Baldwin's been overturned. And the new standard under Sue is that basically you must prove he subjectively intended to do that. The problem was my trial was in February of 1992, and the Sue case didn't come out until May of 1990 – I mean 2002. So on the one hand, at the trial court, I got judged under a standard that was no longer applicable. In the district court, I got a standard that hadn't even been announced at the time of the trial. So when I'm preparing my evidence, obviously it's difficult for me to know what the law is going to change three months from now and present the evidence and correspond – to comply with the, quote, new law that I didn't even know existed. And I think that was just plain legal error for the district court to hold me to a standard that had not been announced at the time of the trial. Well, specifically where we are here on standard of review, clearly erroneous on the question of whether the publication was willful. Is that – is that where we are as you look at it? In other words, what precisely is in front of this Court at this moment? Well, this Court is not required to take into consideration the district court's rulings. I've cited that over and over again. Well, what are we – There is no substantial evidence. I don't forget about substantial. There was, quote, no evidence that he had any subjective belief that his statements were true. Therefore, the ruling by the district court would be clearly erroneous in your view. Well, certainly, because the district court refused to apply that standard and held me instead to the new Sioux standard, which was not in effect at the time of the trial. I can't hardly, you know, be – be prepared to present evidence under a standard that doesn't exist. I think that is why I think there's no factual disputes here. It's just two legal errors. The court – the lower court's finding evidence in a triple or quadruple hearsay article that simply did not legally exist, and then being held to standards that in the case of the bankruptcy court were outdated in the case of the district court had not been announced at the time of the trial. Your position is it would have been one thing if Sirkoff, is that how you pronounce his name, had shown up at the adversary hearing and testified and said, this was my intention and blah, blah, and your client testified to the contrary or offered evidence contrary, and that was weighed. Absolutely. But this is a circumstance where in your judgment there was no evidence. Not only there was no evidence, there couldn't have been any evidence. He precluded from presenting evidence. The plaintiff's motion eliminated. He didn't come – see, not only didn't I – I violated my client's due process rights to confront and cross-examination. We couldn't even object to that evidence because he never put in, as required by the bankruptcy rule, I think it's 9017, required to put in his declarations and his evidence. At least I could have objected to it. And is it your position that that's his burden? Under the bankruptcy rule, absolutely. No, no, no. His burden to show that he – that he did this in a good faith manner, that he believed what he was saying was true. No. It was our burden under the Baldwin case that was in effect at the time of the trial to show that there was objective, substantial certainty that he intended to injure my clients. Even under the Sue case, and the district court even acknowledges, you just don't have to take the debtor's word for it. You can look at the circumstantial evidence and see is there any objective grounds for the court to conclude that he actually believed the truth of what he was saying. In this case, zero evidence. Couldn't have been and there wasn't. And so I think there's no need to remand this for a retrial because I think my client is entitled to a – to just a simple reversal based on two errors of law and the absence of any triable issues of fact that I can identify. I'm glad to respond to any further questions. No further questions. Thank you, counsel. The case just argued will be submitted for decision and we shall adjourn. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: O'scannlain, Siler , Hawkins